MILLARD SHANKLIN, Appellee, v. T. A. KEARNS, Appellant.

**BROKERS:** Noninducing Cause. Evidence reviewed, and held to show affirmatively that plaintiff in an action to recover a broker's commission was not the inducing cause of the sale, even though plaintiff had, in a former attempt to make a sale of a different farm, introduced the latter purchaser to the defendant.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

FEBRUARY 15, 1921.

ACTION by plaintiff to recover from defendant a share of commission on sale of real estate. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Voris & Haas,* for appellant.

*E. W. Griffith,* for appellee.

ARTHUR, J.—Both parties were engaged in the real estate business. Plaintiff had an office in Marion, Iowa, and the defendant was engaged in business, with his office at Central City, Iowa.

Plaintiff alleges that he and defendant entered into an oral contract, about the 1st of June, 1919, by which it was agreed that, if plaintiff should find a purchaser for any farm that was listed on the books of the defendant, and a sale was made, the commission for the sale of such farm land would be divided between the plaintiff and the defendant, plaintiff to have one half of such commission, as a recompense for the time and money and expense and profit in making such sale; that plaintiff showed to C. C. Carpenter a farm of 90 acres adjoining Prairieburg, the property of Mrs. Fish; that the farm sold to Carpenter was known as the H. C. Myers farm; that plaintiff, in accordance with such agreement, furnished a purchaser for one of the farms listed by the defendant; that plaintiff, in company with the defendant, showed a farm that was listed by the defendant to C. C. Carpenter, who was the man plaintiff furnished and introduced to the defendant; that defendant, in the absence of plaintiff, closed a deal with Carpenter, and sold him 160 acres for the sum of $36,000, upon which there was a commission of $720, of which one half, or $360, belongs to plaintiff; that defendant has received the commission of $720, but refuses to pay the plaintiff his one half thereof, or $360. This suit is brought to recover $360, one half of said commission.

Defendant in his answer states that, about the latter part of May or the 1st of June, plaintiff came to him and asked if he had any farms of about 80 acres listed with him for sale, and the

defendant informed him he had one, the Fish farm near Prairieburg, and the plaintiff then told defendant that he had a customer for a farm of that size, and that he would produce such prospective purchaser if defendant would show such farm to said prospect and divide the commission with him, in the event a sale was made to such prospective purchaser; that thereupon, defendant agreed with plaintiff that he would show the Fish farm to the prospective purchaser, in company with plaintiff, and that, if a sale was made, he would divide commission with plaintiff; that thereafter, plaintiff produced C. C. Carpenter as such prospective purchaser for said Fish farm, and defendant, in company with plaintiff, showed the Fish farm to Carpenter, but Carpenter did not purchase it; that thereafter, about June 10, 1919, defendant verbally agreed with plaintiff that he would share commissions with him on any sale of land listed with defendant made to a purchaser actually procured and brought to defendant by plaintiff; that thereafter, about the last day of June, 1919, the Myers farm of 160 acres was listed with the defendant, and within a couple of days thereafter, C. C. Carpenter came to defendant, independently and without the procurement of plaintiff, and said that he was in the market for a farm, and asked defendant what he had listed; that defendant told him of the Myers farm, and induced Carpenter to look at it, and entered into negotiations with him which resulted in the purchase by Carpenter of the Myers farm; that plaintiff had no part in said negotiations, and had no knowledge that Carpenter was contemplating the purchase of the Myers farm, and had no notice or knowledge that Carpenter was defendant's customer; and that plaintiff did not produce or tender Carpenter as a prospective purchaser of the Myers farm, and did not procure or induce Carpenter to enter into any negotiations for the Myers farm, and was not the active and inducing cause of said sale.

The Myers farm was sold to Carpenter for $36,000, and the commission received by defendant was $720. There is some difference in the statement of agreement made by plaintiff and that made by defendant.

Defendant claims in his pleading, and also in his evidence, that the June 1st talk and agreement between him and the plain-

tiff was that plaintiff was to find a purchaser for the Fish farm of 90 acres, lying near Prairieburg, or for another farm of 80 acres lying three miles south of Central City. Defendant's further claim is that, about June 10th, after he had failed to sell to Carpenter the Fish farm or the other farm lying south of Prairieburg, he agreed with plaintiff that he would share commissions with him on any sale of land he had listed with him, for which plaintiff would procure a purchaser who would actually close up the deal and purchase the land. But as the Myers farm was not sold to Carpenter until the last days of June, and as there is no material difference between the contract that plaintiff claims was made about the 1st of June and the one that defendant claims was made about the 10th of June, the date of the contract is immaterial.·

There is no material difference in the contract as claimed by plaintiff and the contract as claimed by defendant, as the agreement has to do with the Myers farm of 160 acres, being the only farm in question in this case. Plaintiff and defendant were witnesses for themselves. There is no material difference in their testimony. They have different theories as to the construction and effect of what was said and done by them. In his testimony, it is not claimed by plaintiff that he even knew of the existence of the Myers farm, or that he knew that the Myers farm was listed with defendant; and it was not listed with the defendant until perhaps the day before it was sold. Plaintiff does not claim to have ever mentioned or shown the Myers farm to Carpenter, and he does not claim to have ever mentioned Carpenter to defendant as a prospective purchaser of the Myers farm. The only farms which plaintiff mentioned to Carpenter, according to his own testimony, were the two farms that defendant had told plaintiff he might find a buyer for, which were the Fish farm of 90 acres and the 80-acre farm lying south of Central City. Plaintiff's theory of his right to recover seems to be that, on account of his having presented Carpenter as a prospective purchaser for the Fish farm, which Carpenter refused to buy, he (plaintiff) was the original discoverer of Carpenter as a man who wanted to buy land, and that he presented him to the defendant as a buyer of land; and that, under their contract, by reason of such presentation of Carpenter, he was

entitled to one half the commission on any piece of land that the defendant might sell to Carpenter. Indeed, it appears that defendant had known Carpenter for 40 years, and was under agreement with him, a year before the sale of the Myers farm, to find for him a suitable 160 acres of land.

We have examined the testimony carefully, but will not indulge in the unnecessary task of setting it out at length. One short quotation from the testimony of plaintiff as a witness is sufficient:

"It was the following Monday that I learned that Kearns had sold the Myers farm. I had never talked with Kearns about the Myers farm, and did not know he had it listed, and never suggested that farm to Carpenter, and I had no knowledge that Carpenter was negotiating for the Myers farm until after I learned it had been sold."

The evidence of both plaintiff and defendant, without any dispute, affirmatively shows that the plaintiff had nothing whatever to do with producing Carpenter as a purchaser for the Myers farm. As plaintiff himself states it:

"I had never talked with Kearns about the Myers farm. I did not know he had it listed, and never suggested that farm to Carpenter, and I had no knowledge that Carpenter was negotiating for the Myers farm until after I learned it had been sold."

What plaintiff did, as shown by the undisputed testimony of both plaintiff and defendant, was that he presented Carpenter to the defendant as a prospective purchaser of what is known as the "Fish farm," of 90 acres, and another farm of 80 acres, lying three miles south of Central City. Carpenter refused to go and see the farm lying south of Central City, but did go, with both plaintiff and defendant, to see the Fish farm, and the defendant showed Carpenter over the Fish farm, while the plaintiff went off somewhere else. Carpenter did not buy the Fish farm. Undoubtedly, if Carpenter had bought the Fish farm, the plaintiff would have been entitled to one half of the commission. But the record shows without conflict—without any dispute whatever—that the plaintiff had nothing to do with the sale of the Myers farm, the only farm that was sold.

Appellant assigns several errors. Most of the errors assigned relate to the overruling of defendant's motion to direct a

verdict in his favor, at the close of plaintiff's testimony, and the renewal of the motion at the close of all the testimony.

There is no sound theory on which to submit the case to the jury. There was not a dispute on a material fact. The stories of plaintiff and defendant were alike on all material matters. The testimony of both parties disclosed, without variance or dispute, that the plaintiff did not produce Carpenter as a purchaser for the Myers farm, and was not instrumental in producing Carpenter as a purchaser for the Myers farm, which is the only farm in question. As before stated, plaintiff knew nothing whatever of the Myers farm, or that it was listed with the defendant, or that it was for sale. It appears from the testimony, without dispute, and as a matter of law, that the plaintiff did not produce and was not instrumental in producing Carpenter to defendant as a purchaser of the Myers farm. Verdict should have been directed for defendant, and it was error to refuse to sustain defendant's motion, made at the close of plaintiff's testimony, and also at the close of all the evidence.

Judgment of court below must be and is—*Reversed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.